IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

JULIO CESAR ESQUIVEL,     §
    §
       Movant,     §
    §
V.     §       No. 3:15-cv-553-D-BN
    §
UNITED STATES OF AMERICA,     §
    §
       Respondent.     §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Movant Julio Cesar Esquivel, a federal prisoner, has filed a 28 U.S.C. § 2255 motion to vacate, set aside, or correct sentence, in which he asserts multiple grounds for why he believes that his trial counsel was constitutionally ineffective. United States District Judge Sidney A. Fitzwater has referred this action to the undersigned United States magistrate judge pursuant to 28 U.S.C. § 636(b) and a standing order of reference. The Court appointed counsel for purposes of – and conducted an evidentiary hearing limited to – Esquivel's claim that his trial counsel was constitutionally ineffective for failing to file a direct appeal on his behalf.

Having carefully considered the record and the parties' arguments, the undersigned issues the following findings of fact, conclusions of law, and recommendation that the Court should find that a Sixth Amendment violation prevented Esquivel from filing a notice of appeal and grant his Section 2255 motion on that ground for relief, such that he should be permitted to take an out-of-time appeal.

-1-

The remaining grounds for relief presented by Esquivel should be dismissed without prejudice to his right to raise the claims on direct appeal or in any other permissible collateral proceeding.

## Applicable Background

The Court appointed Michael Lehmann to represent Esquivel during his criminal proceeding in this Court, in which Esquivel ultimately pleaded guilty to a superseding information charging him with conspiracy to possess with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1). *See United States v. Esquivel*, No. 3:13-cr-411-D (03) (N.D. Tex.), Dkt. Nos. 23, 70-74, & 87.

On August 8, 2014, Esquivel was sentenced to 78 months' imprisonment, "the approximate midpoint of the advisory guideline range" of 70 to 87 months. *Id.*, Dkt. No. 171 at 8. That range was based on a criminal history score of 0 and an offense level of 27 – six levels less than the offense level calculated in the original presentence report (the "PSR"). That reduction resulted in part from Esquivel's objections to not receiving a two-level reduction under the safety valve (U.S.S.G. § 5C1.2) and for receiving a two-level enhancement for maintaining a premises for the purposes of manufacturing or distributing a controlled substance under U.S.S.G. § 2D1.1(b)(1). *See* 3:13-cr-411-D, Dkt. Nos. 108, 113, 115, 117, & 129.

The applicable offense level also took into account a two-level downward variance based on a then-forthcoming amendment to the guidelines – Amendment 782, which reduced the base offense levels applicable to most quantities on the drug and

chemical quantity tables. *See id.*, Dkt. No. 171 at 4-6. In exchange for this reduction, Esquivel waived his right to file a motion under 18 U.S.C. § 3582(c)(2) based on that amendment. *See id.*; *see also id.*, Dkt. No. 128.

At sentencing, Esquivel addressed the Court through an interpreter, asking the Court to consider his cooperation with authorities and expressing his "regrets to [the Court], to [his] family, and that [he plans] never to be in a situation like this again." *Id.*, Dkt. No. 171 at 6-7. His trial counsel argued for a sentence of 70 months, citing, among other things, that "Esquivel was a low-level player in this conspiracy." *Id.* at 7. After the sentence was pronounced, the Court did not address Esquivel's appellate rights.

But the Court did review those rights at the April 25, 2014 rearraignment. *See id.*, Dkt. No. 182:

> THE COURT: Do you also understand that after the advisory guideline range has been determined for your case I have the authority to impose a sentence that is more severe than the sentence called for by the advisory guideline range?
> THE DEFENDANT (Through Interpreter): Yes.
> THE COURT: Do you understand that in some circumstances you or the government may appeal my sentence?
> THE DEFENDANT (Through Interpreter): Yes.
> THE COURT: And do you understand that in paragraph 11 of your plea agreement, contained on page 5, you are waiving your right of appeal and of postconviction challenge to your conviction and sentence, except in very limited circumstances?
> THE DEFENDANT (Through Interpreter): Yes.
> THE COURT: When you entered into paragraph 11 of the plea agreement, in particular, did you understand the rights that you were giving up and did you voluntarily and knowingly decide to give up those rights?
> THE DEFENDANT (Through Interpreter): Yes.

> THE COURT: Counsel, are you satisfied that your client knowingly and voluntarily entered into paragraph 11 of the plea agreement, in particular?
>
> MR. LEHMANN: Yes, Your Honor.
>
> THE COURT: I find that the defendant knowingly and voluntarily entered into paragraph 11 of the plea agreement, in particular.

*Id.* at 17-18.

No direct appeal was filed. The motion to vacate is, however, timely under 28 U.S.C. § 2255(f)(1).

## Legal Standards

<u>Ineffective-Assistance Claims Generally</u>

The Court reviews Sixth Amendment claims concerning the alleged ineffective assistance of counsel under the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a movant must demonstrate that the performance of his attorney fell below an objective standard of reasonableness. *See* 466 U.S. at 687-88. To be cognizable under *Strickland*, counsel's error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. The movant also must prove that he was prejudiced by his attorney's substandard performance. *See id.* at 687, 692. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

> [B]ecause of the risk that hindsight bias will cloud a court's review of counsel's trial strategy, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered

-4-

sound trial strategy.'"

*Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) (quoting *Strickland*, 466 U.S. at 689)).

"A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003). And,"[j]ust as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Harrington v. Richter*, 562 U.S. 86, 110 (2011).

To demonstrate prejudice, a movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Thus, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Harrington*, 562 U.S. at 111. "Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different," which "does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.'" *Id.* at 111-12 (quoting

*Strickland*, 466 U.S. at 693, 696, 697). "The likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 112.

"'Failure to satisfy either prong is fatal to an ineffective assistance of counsel claim.'" *United States v. Bejarano*, 751 F.3d 280, 285 (5th Cir. 2014) (per curiam) (quoting *Crutsinger v. Stephens*, 540 F. App'x 310, 313 (5th Cir. 2013) (per curiam); brackets deleted).

Failure to File an Appeal

In *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), the United States Supreme Court "held that the *Strickland* test applies to claims 'that counsel was constitutionally ineffective for failing to file a notice of appeal.'" *Bejarano*, 751 F.3d at 285 (quoting *Flores-Ortega*, 528 U.S. at 477).

As to such a claim, the Court's *Strickland* analysis "begins with the question whether counsel 'consulted' with the defendant regarding an appeal" – that is, whether counsel advised "'the defendant about the advantages and disadvantages of taking an appeal, and [made] a reasonable effort to discover the defendant's wishes,'" *United States v. Pham*, 722 F.3d 320, 323 (5th Cir. 2013) (quoting *Flores-Ortega*, 528 U.S. at 478)).

"If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." *Flores-Ortega*, 528 U.S. at 478; *see also Frazer v. South Carolina*, 430 F.3d

696, 707 (4th Cir. 2005) ("The threshold consideration is whether the defendant had independently decided whether to appeal and communicated that decision to counsel. If the defendant has affirmatively requested an appeal, counsel's assistance to the defendant in making that decision is obviously unnecessary. Indeed, long before *Strickland*, the Supreme Court held that the 'fundamental decision' of whether to appeal rests with the defendant." (quoting *Jones v. Barnes*, 463 U.S. 745, 751 (1983); citations and footnote omitted)).

> [I]f the petitioner is able to demonstrate by a preponderance of the evidence that he requested an appeal, prejudice will be presumed and the petitioner will be entitled to file an out-of-time appeal, regardless of whether he is able to identify any arguably meritorious grounds for appeal that would not be precluded by the terms of his appeal waiver.

*United States v. Tapp*, 491 F.3d 263, 266 (5th Cir. 2007) (noting that *Flores-Ortega* applies "even where a defendant has waived his right to direct appeal and collateral review"); *see also Flores-Ortega*, 528 U.S. at 485 (explaining that a "defendant, by instructing counsel to perfect an appeal, objectively indicate[s] his intent to appeal and [is] entitled to a new appeal without any further showing" (discussing its holding in *Rodriguez v. United States*, 395 U.S. 327 (1969))); *Vinyard v. United States*, 804 F.3d 1218, 1228 (7th Cir. 2015) (cases in which a defendant instructs "counsel to appeal only to have counsel refuse or forget" "justify the presumption because defendants abandoned by their lawyers have 'suffered injury from that very fact – from the loss of advocacy services that could have been used to *establish* a non-frivolous issue for appeal'" (quoting *Betts v. Litscher*, 241 F.3d 594, 597 (7th Cir. 2001); emphasis in

*Betts*)).

But if

counsel failed to consult with the defendant about an appeal, then the question is whether that failure was unreasonable because it breached the duty to consult. "[C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." The existence of a duty to consult is assessed in light of "all the information counsel knew or should have known." Whether the conviction followed a trial or a guilty plea is "highly relevant," although not determinative, as is whether the defendant waived his right to appeal and whether he received a sentence for which he bargained. The Supreme Court predicted that district courts would find a duty to consult "in the vast majority of cases."

*Pham*, 722 F.3d at 324 (quoting *Flores-Ortega*, 528 U.S. at 480-81).

Where the claim is that counsel breached his constitutionally-imposed duty to

consult with the defendant about an appeal, prejudice is not presumed. Instead,

"a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Flores-Ortega*, 528 U.S. at 484. "[E]vidence that there were nonfrivolous grounds for appeal or that the defendant in question promptly expressed a desire to appeal will often be highly relevant in making this determination." *Id.* at 485.

> To prove deficient performance, a defendant can rely on evidence that he sufficiently demonstrated to counsel his interest in an appeal. But such evidence alone is insufficient to establish that, had the defendant received reasonable advice from counsel about the appeal, he would have instructed his counsel to file an appeal.

*Id.* at 486. The Court has explained that "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quoting *Strickland*, 466 U.S. at 694). The defendant need not show "that his hypothetical appeal might

have had merit." *Flores-Ortega*, 528 U.S. at 486.

*Bejarano*, 751 F.3d at 285 (some internal citations modified or omitted).

## Analysis

Esquivel is a native Spanish speaker, and, as reflected above, he has required

the assistance of an interpreter during court proceedings. *See also* Dkt. No. 23 at 8.

Esquivel's trial counsel is a fluent Spanish speaker, who testified that he had no

"difficulties communicating with [Esquivel] in his native language." *Id.* at 7, 8.

Although trial counsel testified that he reviewed Esquivel's appellate rights with

him prior to rearraignment, *see id.* at 9-10, there is no dispute that trial counsel only

"briefly" spoke to Esquivel just after sentencing and did not speak with him after the

day of sentencing:

> Q. [by the government] And did you speak to Mr. Esquivel after sentencing?
> A. Yes, briefly.
>
> We had a conversation as we were leaving the lectern, talking, you know. Like – like most of my clients, the moment of sentencing is kind of surreal. You know, there's kind of a numbness, a shock.
>
> And so I know he was unhappy. I mean, that's obvious from body language. But what I did was I reassured him that we won our objections and he got a guideline sentence, which is good, especially in light of how far we had moved those guidelines from the moment that the PSR was issued to the time that we got to court. And never at any point did he indicate that he wanted to appeal.
> Q. So he never said to you, "File a notice of appeal"?
> A. Never.
> Q. After that did you ever talk to him again?
> A. I did not. I didn't receive a phone call at my house or at my office, nothing.
>
> I had maintained contact with Mr. Esquivel's wife throughout this. And so had something arisen, had there been a need, I believe that the channels of communication were sufficiently open for him.
> Q. So you also did not hear from his wife regarding an appeal?

A. No, I did not.

. . . .

[Q. by Esquivel's habeas counsel] So you said you knew he was upset. What -- what did he say that made you know he was upset with the outcome?
A. I don't know if it was so much verbal communication; but, you know, I mean, you can tell when someone looks dejected or unhappy.
Q. Okay. And you also said that there's always a shock at sentencing. Do you – so you typically don't go and talk to them, like, a day later or something, let the shock wear off and see what they think about the case? You didn't do that in this case? You don't typically do that? I'm sorry if that's compound.
A. Which question would you like me to answer?
Q. So in this case, you know, when he was shocked at that moment, you just talked to him then, but you never talked to him after, after the day of sentencing?
A. I don't believe I talked to Mr. Esquivel after the day of sentencing.
Q. Okay. Did you talk to his wife after?
A. I don't recall whether or not I spoke with Mr. Esquivel's wife after sentencing; however, I do know that I would recall had there been a request for something for me to do.

*Id.* at 13-15.

As the United States Court of Appeals for the Fifth Circuit has observed, there is no "'mechanical rule' that consultation must always follow sentencing," but "counsel's cursory discussion *before* sentencing [does] not compensate for the complete failure to mention the possibility of appeal *after* sentencing." *Pham*, 722 at 324 n.16 (emphasis in original).

Turning to the key issue in *Pham*, which is also applicable here, the Fifth Circuit there assessed whether a defendant's "post-sentencing statements and demeanor," "when viewed in context, was enough to trigger counsel's constitutional duty to consult with [the defendant] about an appeal." *Id.* at 324-26. His counsel knew

-10-

that Pham "had hoped to receive a sentence of probation only," and, "[w]hen that hope did not materialize, a visibly upset Pham 'brought up that he was concerned about getting 60 months and wanted to do something to get less time.'" *Id.* at 325. And the Fifth Circuit concluded that "Pham's post-sentencing statement to counsel and his demeanor when uttering it reasonably demonstrated his interest in appealing his sentence, such that counsel had a duty to consult with Pham about an appeal." *Id.* at 326 (further identifying "no factors that take this case out of the 'vast majority' in which counsel has a duty to consult" (quoting *Flores-Ortega*, 528 U.S. at 481)).

As *Pham* reflects, the trigger to determine whether counsel's failure to consult with a defendant after sentencing amounted to constitutionally-deficient performance is whether there "was [an] ample demonstration of [a defendant's] interest in doing something to change the outcome of his sentence through additional proceedings." *Id.* at 325; *see United States v. Cooper*, 617 F.3d 307, 313 (4th Cir. 2010) ("When applying *Flores-Ortega*, our court has found a breach of the *Strickland* duty usually because the defendant said something to his counsel indicating that he had an interest in appealing." (citations omitted; cited in *Pham*)).

But the constitutional duty to consult regarding an appeal is not triggered where a defendant merely informs "counsel immediately following the sentencing hearing that he was dissatisfied with his sentence" but then, through post-sentencing communication, fails to "express to counsel any interest in appealing the sentence." *United States v. Casarez*, 304 F. App'x 325, 325 (5th Cir. 2008) (per curiam) (cited in *Pham*). Moreover, "[n]either *Flores-Ortega* nor any other Supreme Court precedent

-11-

establishes that merely expressing unhappiness at a sentencing hearing is sufficient to reasonably demonstrate an interest in appealing." *Jackson v. Attorney Gen. of Nev.*, 268 F. App'x 615, 620 (9th Cir. 2008) (per curiam) ("Although Jackson was unhappy with some of the proceedings in the trial court, he neither alleges nor contends that he demonstrated anything beyond this unhappiness that would suggest he reasonably demonstrated to counsel a desire to appeal.") (cited in *Pham*).

Here, the analysis begins with trial counsel's testimony that he and Esquivel at least "met prior to rearraignment," "at the arraignment," and "prior to sentencing, and" that they "spoke even after sentencing," but, somewhat understandably, trial counsel did not "have independent recollection as to the content of each of those conversations." Dkt. No. 23 at 10 (further stating that he did "believe that we could have covered all of [the waiver issues in the plea agreement] ad nauseam"). This testimony does not support a finding that any discussion between Esquivel and his trial counsel "before sentencing ... compensate[d] for [counsel's] complete failure to mention the possibility of appeal after sentencing." *Pham*, 722 F.3d at 324 n.16 (emphasis omitted).

Trial counsel further testified that the sentence calculated in the PSR "was much higher than what [his] original handicap of the case was." Dkt. No. 23 at 11. This testimony is not inconsistent with a sworn affidavit that Esquivel submitted with his reply, in which he testified that counsel represented to him "that [he] would be sentenced to 3-4 years because [Esquivel] had no criminal history." Dkt. No. 14 at 11.

To address Esquivel's affidavit more broadly, he did not testify at the evidentiary hearing, and, while the affidavit is not consistent with some statements

in Esquivel's initial motion to vacate and memorandum in support, it is clear from the record that Esquivel relied on the assistance of fellow inmates more proficient in English to prosecute this action, an acknowledged reality of habeas corpus proceedings. *See Johnson v. Avery*, 393 U.S. 483 (1969) (finding an absolute ban forbidding inmates from assisting other inmates with the preparation of habeas corpus petitions unconstitutional at least as applied to illiterate inmates); *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (while prisoners possess a well-established constitutional right to access the courts, *see Bounds v. Smith*, 430 U.S. 817, 821 (1977), "*Bounds* does not guarantee inmates the wherewithal to transform themselves into litigation engines.... The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement."); *see also, e.g.*, *In re Bonilla*, 424 S.W.3d 528, 531-32 (Tex. Crim. App. 2014) ("[P]rison regulations must not prohibit prisoners from assisting each other with habeas corpus applications and other legal matters because 'jailhouse lawyers' serve a role in assisting indigent prisoners who are unable to afford counsel and are 'unable themselves, with reasonable adequacy, to prepare their petitions' challenging the legality of their confinements." (quoting *Johnson*, 393 U.S. at 489)); *Harris v. Wall*, 604 F. App'x 518, 521 (7th Cir. 2015) (per curiam) ("[A] prisoner may also help another inmate, otherwise unable to help himself, access the courts." (citing *Johnson*, 393 U.S. at 487)).

The inmate who assisted Esquivel to prepare his reply brief and accompanying affidavit submitted correspondence to the Court dated September 20, 2015 to which the

inmate attached his own sworn affidavit setting out how Esquivel's affidavit was prepared with the assistance of a Spanish-speaking inmate. *See* Dkt. No. 20 at 4 ("When preparing [the reply] and affidavit I had a [H]ispanic inmate interpret for me, the affidavit was Julio Cesar Esquivel's words, I simply took his Spanish and translated it to English."); *see also id.* ("When I read the original filings, it was clear to me that whoever wrote that original memorandum of law had a very limited understanding of the English language, and even less of an understanding of the law.").

Because Esquivel's affidavit is consistent with other aspects of the record, more of which will be outlined below, and because that affidavit is not necessarily inconsistent with trial counsel's testimony, the undersigned chooses to credit the affidavit.

Esquivel has testified that, when he received the 78-month sentence, he told trial counsel that he "was not happy with the outcome because it was not in line with what [trial counsel] told me would happen, or what [he] would get sentenced to." Dkt. No. 14 at 12. This testimony is not consistent with Esquivel's testimony at rearraignment that no person had made any prediction or promise to him as to the sentence he would receive, *see* No. 3:13-cr-411-D, Dkt. No. 182 at 15, but it is consistent with trial counsel's testimony that Esquivel appeared "dejected or unhappy" at sentencing and also consistent with trial counsel's testimony that the sentence as calculated was much higher than his original estimate, Dkt. No. 23 at 14, 11.

Esquivel also has testified that he "told [trial counsel] that [he] felt the drug

-14-

weights were wrong." Dkt. No. 14 at 12. That statement is consistent with trial counsel's acknowledgment that they spoke briefly after sentencing, *see* Dkt. No. 23 at 10 & 13, and, more importantly, as delivered by a visibly dejected or unhappy inmate after the pronouncement of sentence, that statement demonstrates a defendant's "interest in doing something to change the outcome of his sentence through additional proceedings," *Pham*, 722 F.3d at 325, thus triggering the constitutional duty to consult with the defendant about an appeal. Because trial counsel did not do so, the Court should find that Esquivel has proven the performance prong of *Strickland*.

But, here, constitutionally-deficient performance alone does not amount to a Sixth Amendment violation. Instead, in this context, "[t]he record [also must] support a finding that there is a 'reasonable probability' that [Esquivel] would have timely appealed but for [his counsel's] deficient failure to consult." *Bejarano*, 751 F.3d at 286.

In *Bejarano*, the Fifth Circuit affirmed the district court's determination on the basis that the movants could not "demonstrate prejudice" as to their claims that counsel failed to "sufficiently consult with them about an appeal." *Id.* at 286-87. The defendants there relied "on two facts to establish reasonable probability: that they expressed interest to counsel in appealing, and [one defendant's] testimony that he would have appealed." *Id.* at 286.

But, as the Supreme Court held in *Flores-Ortega*, evidence that a defendant "'sufficiently demonstrated to counsel his interest in an appeal,'" by itself, "'is insufficient to establish that, had the defendant received reasonable advice from counsel about the appeal, he would have instructed his counsel to file an appeal.'"

*Bejarano*, 751 F.3d at 286 (quoting *Flores-Ortega*, 528 U.S. at 486). And, as to the one defendant's testimony at the evidentiary hearing in *Bejarano* that he would have appealed, the Fifth Circuit relied on the district court's findings that "'[n]othing in the record support[ed]' this supposition, which the district court found to be "'self-serving' and 'implausible in light of the other evidence.'" *Id.* at 287; *see also id.* (finding it relevant that the defendants "waited 'almost a full year after sentencing' to file their petitions, post-sentencing actions that some courts have concluded 'indicate [the defendant] was unlikely to have' timely appealed" (quoting *Johnson v. United States*, 364 F. App'x 972, 977 (6th Cir. 2010))).

Esquivel also has testified that, "[h]ad [trial counsel] discussed [his] right to appeal and or consulted with [him, he] would have directed him to file a direct appeal on [his] behalf." Dkt. No. 14 at 12 ("I would have certainly discussed my objections to the drug weight amounts with him that the court made a finding of."). But the record here, unlike the record in *Bejarano*, supports that statement, because, approximately three months after judgment was entered in his criminal case, Esquivel filed a *pro se* motion to reduce his sentence under Section 3582(c)(2). *See* No. 3:13-cr-411-D, Dkt. No. 166. Although Esquivel waived his right to file such a motion based on Amendment 782 – and the Court denied the motion for that reason, *see id.*, Dkt. No. 169 – the filing of the motion itself is record evidence of Esquivel's taking some action, temporally proximate to the entry of judgment, "to change the outcome of his sentence through additional proceedings," *Pham*, 722 F.3d at 325.

"In demonstrating prejudice, the defendant is under no obligation 'to

-16-

demonstrate that his hypothetical appeal might have had merit,'" *United States v. Poindexter*, 492 F.3d 263, 269 (4th Cir. 2007) (quoting *Flores-Ortega*, 528 U.S. at 486)); *accord Bejarano*, 751 F.3d at 285. Instead, "[i]f the defendant did not ... instruct his attorney [to file an appeal] and his attorney subsequently did not fulfill his consultation obligations, prejudice will be presumed if the defendant can show that, had he received reasonable advice from his attorney, he would have instructed his attorney to file a timely notice of appeal." *Poindexter*, 492 F.3d at 268-69 (citing *Flores-Ortega*, 528 U.S. at 486). For present purposes, therefore, the undersigned is not concerned that Esquivel waived his right to file the Section 3582(c)(2) motion.

Consequential to the current analysis, instead, is that the *pro se* motion filed some three months after entry of judgment concerns drug quantities, which is consistent with Esquivel's statement that, had trial counsel consulted with him after sentencing, Esquivel "would have certainly discussed ... objections to the drug weight amounts." Dkt. No. 14 at 12. Esquivel's filing this motion close after trial counsel's failure to consult about an appeal after sentencing is "sufficient to undermine confidence" in a conclusion that, "had the defendant received reasonable advice from counsel about the appeal," no appeal would have been filed. *Cullen*, 563 U.S. at 189; *Flores-Ortega*, 528 at 486; *cf. Frazer*, 430 F.3d at 712 (finding prejudice shown where the "interest in an appeal was unwavering and ongoing").

The Court should therefore find that, on this record, because there is a reasonable probability that, but for trial counsel's breach of his constitutionally-imposed duty to consult about an appeal, Esquivel would have appealed. The Court

should therefore conclude that Esquivel has proven the prejudice prong of *Strickland*.

## Recommendation

The Court should find that a Sixth Amendment violation prevented Esquivel from filing a notice of appeal and grant his Section 2255 motion on that ground for relief, such that he should be permitted to take an out-of-time appeal. The remaining grounds for relief presented by Esquivel should be dismissed without prejudice to his right to raise the claims on direct appeal or in any other permissible collateral proceeding.

The judgment in Esquivel's criminal case should be re-entered after the Court has resolved the question of whether to appoint counsel on appeal. Under Federal Rule of Appellate Procedure 4(b), Esquivel should have 14 days from the date of re-entry of judgment to file his notice of appeal with the district court. *See United States v. Rivas*, 450 F. App'x 420, 429-30 (5th Cir. 2011) (per curiam); *United States v. West*, 240 F.3d 456, 458 (5th Cir. 2001).

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by

reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: October 3, 2016

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE